UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
In Re: ORLY GENGER,                     :
                                        :
                         Debtor,        :
                                        :
-------------------------------------   :    24cv7072 (DLC)
                                        :
DALIA GENGER,                           :    OPINION AND
                                        :       ORDER
                  Plaintiff-Appellant,  :
                                        :
              -v-                       :
                                        :
ORLY GENGER, ET AL.,                    :
                                        :
                  Defendants-Appellees. :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff-appellant:
Iran Daniel Tokayer
Law Offices of Ira Daniel Tokayer, Esq.
420 Lexington Ave, Suite 2400
New York, NY 10170

For defendant-appellee Orly Genger:
Michael Paul Bowen
Richard C. Ramirez
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036

For defendant-appellee Arie Genger:
Frank A. Oswald
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119

For defendant-appellee Deborah J. Piazza, Chapter 7 Trustee:
Rocco A. Cavaliere
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor

New York, NY 10018

For defendants-appellees ABDG LLC, Arnold Broser, David Broser,
Tedco, Inc., and the Genger Litigation Trust:
Chrstopher K. Kiplok
Christopher Gartman
Carl W. Mills
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004


DENISE COTE, District Judge:

Dalia Genger appeals from a ruling by the Honorable James
L. Garrity, Jr., United States Bankruptcy Judge, dismissing the
claims she filed in her daughter's chapter 7 bankruptcy
proceeding.  For the following reasons, the Bankruptcy Court
decision is affirmed.

## **Background**

The background to this dispute is set forth in detail in
the Bankruptcy Court's August 12, 2021 Memorandum Decision and
Order.  See In re Genger, No. 19-13895 (JLG), 2021 WL 3574034
(Bankr. S.D.N.Y. Aug. 12, 2021).  Many of the facts described
below are drawn from Dalia's First Amended Complaint ("FAC") and
the documents it incorporates.

I.   Factual Background

A.   The 2004 Agreements

Dalia and her ex-husband, defendant Arie Genger, are the
parents of a son, Sagi Genger, and a daughter, Orly Genger.

2

Orly filed for bankruptcy in 2019. Central to the claim that Dalia has filed in Orly's bankruptcy proceeding are three agreements that were executed in 2004, when Dalia and Arie divorced.

As part of the divorce, Dalia agreed to relinquish rights in 794.40 shares of Trans-Resources, Inc. ("TRI") (the "Rights") to trusts benefitting Orly and Sagi (the "Sagi Trust" and the "Orly Trust") in exchange for continuing financial support. The arrangement was effectuated in three documents (the "2004 Agreements"). On October 30, 2004, Dalia and Arie executed a stipulation finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"). The 2004 Divorce Stipulation provided that Dalia would convey her TRI shares in equal parts to the Orly Trust and the Sagi Trust. On the same day, Dalia and Sagi signed a letter in which Sagi agreed to pay Dalia up to an amount equal to all dividends, distributions, proceeds or other payments attributable to the TRI shares upon Dalia's demand (the "2004 Promise"). Sagi and Orly signed a letter dated November 10, 2004 in which Orly agreed to indemnify Sagi for one-half of the payments he made to Dalia pursuant to the 2004 Promise (the "2004 Indemnity"). Thus, the only agreement executed by Orly was to indemnify Sagi.

From 2008, as described by the Bankruptcy Court, see In re Genger, 2021 WL 3574034, at *4, there was litigation among various parties over the TRI shares, including the TRI shares transferred to the two trusts.  Some of the litigation was filed by Dalia.  In 2013, Orly (in her individual capacity and as beneficiary of the Orly Trust) and others entered into a settlement agreement to resolve conflicting claims over the ownership of the TRI shares (the "2013 Settlement Agreement").  Orly waived all claims that she or her trust may have to ownership of any TRI shares.  Pursuant to the 2013 Settlement Agreement, the TRI shares in the Orly Trust were converted into cash and two promissory notes and both were distributed to others.  Dalia received a copy of the 2013 Settlement agreement.

B.   Dalia's Demands and the 2015 and 2018 Judgments

In January 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise (the "2014 Demand"), which Sagi paid.  Sagi sought indemnification from Orly pursuant to the 2004 Promise, but Orly refused.  Sagi sued Orly for breach of contract.

In a 2015 decision, the Honorable Katherine B. Forrest granted summary judgment to Sagi (the "2015 Judgment").  Genger v. Genger, 76 F. Supp. 3d 488, 491 (S.D.N.Y. 2015), aff'd, 663 F. App'x 44 (2d Cir. 2016) ("Genger I").  Among other things, Judge Forrest concluded that the 2004 Divorce Stipulation, the

4

2004 Promise, and the 2004 Indemnity constituted a single integrated agreement.  Judge Forrest reasoned that each party to the integrated agreement benefited in exchange for a legal obligation:

> Dalia receives financial support in exchange for the transfer of the TRI shares to the Sagi Trust and the Orly Trust; Sagi receives an ownership interest in the TRI shares in exchange for a commitment to financially support Dalia; and Orly receives an ownership interest in TRI shares in exchange for a commitment to indemnify Sagi.

Id. at 499.  The court held that Orly breached her promise to indemnify Sagi when she rejected Sagi's demand for indemnification.  Id. at 502.

Dalia made a second demand on Sagi on October 21, 2017, requesting $6 million.  Sagi rejected the demand, and Dalia sued him for breach of contract.  See Genger v. Genger, No. 17-CV-8181 (KBF), 2018 WL 3632521, at *2 (S.D.N.Y. July 27, 2018) ("Genger II").  Sagi conceded that the 2004 Promise was enforceable.  Id.  He argued, however, that his obligation to pay Dalia was made jointly with Orly, who had indicated to him that she would not honor her promise to indemnify him, and that it would thus be inequitable for him to pay their mother.  Id. Sagi brought a third-party complaint against Orly for breach of the 2004 Indemnity.

5

Dalia moved for summary judgment against Sagi on her breach of contract claim, and Sagi moved for partial summary judgment against Orly.  In response, Orly moved to dismiss the third-party complaint for lack of subject matter jurisdiction.  Judge Forrest held, based on the rulings in Genger I, that it has been

> conclusively established that: (1) the 2004 Integrated Agreement is valid and enforceable; (2) Sagi and Orly monetized their beneficial interests in the TRI shares for a total of $69.3 million, [$24.7 million] of which was attributable to Dalia's conveyed marital interest; and (3) pursuant to the 2004 Integrated Agreement, Dalia is entitled to demand payment up to a certain amount in her "sole and absolute discretion."

Id. at *6 & n.5.  Judge Forrest granted summary judgment to Dalia on her breach of contract claim (the "2018 Judgment").  Id. at *6.  The court denied Orly's motion to dismiss and granted Sagi's motion for partial summary judgment against Orly.  Id. at *6-8.  The Second Circuit affirmed.

Dalia alleges that the 2015 and 2018 Judgments explain that "of the $32.3 million monetized and received by Orly pursuant to the 2013 Settlement Agreement, Orly must pay Dalia up to $12.25 million from the monetized proceeds of the Rights."  That figure represents 50 percent of the $24.7 million from the 2013 Settlement that Judge Forrest concluded was attributable to Dalia's conveyed marital interest in the TRI shares, minus the $200,000 that Dalia received from Sagi in 2014.

6

Dalia alleges that Orly frustrated Dalia's rights to the $12.25 million by entering into the 2013 Settlement Agreement. Dalia asserts that through the Agreement, Orly "fraudulently transferred" approximately $17.3 million and two promissory notes to creditors and/or business partners of Arie and to one of Orly's attorneys.  In short, Dalia contends that she was legally entitled to the proceeds generated from the 2013 Settlement Agreement, and that Orly diverted those proceeds with the actual or constructive intent to frustrate Dalia's rights.

II.  Bankruptcy Court Proceedings

Orly commenced a voluntary bankruptcy under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas on July 12, 2019.  The case was transferred on December 10, 2019 to the United States Bankruptcy Court for the Southern District of New York.

On January 22, 2020, Dalia commenced the adversary proceeding underlying this appeal, amending her complaint on June 7, 2020 ("FAC").  The FAC seeks enforcement of a constructive trust for Delia's benefit of up to $12.25 million plus interest and demands that the two promissory notes be delivered to Dalia.  She seeks an equitable lien over the same property and an injunction in aid of this relief.

Two motions to dismiss the FAC were filed, one by the Bankruptcy Trustee and one by the remaining defendants named in the adversary action.  On August 12, 2021, Judge Garrity granted the motions to dismiss.  In re Genger, No. 19-13895-JLG, 2021 WL 3574034, at *2 (Bankr. S.D.N.Y. Aug. 12, 2021).  The Bankruptcy Court dismissed the FAC on grounds that Dalia lacked constitutional and prudential standing to bring her claims; the claims were time barred; and Dalia failed to state claims for relief.  Id.  The Bankruptcy Court also denied Dalia's request for leave to replead.  Id.  On September 1, 2024, the Bankruptcy Court denied Dalia's motion for reconsideration.  Dalia noticed her appeal from both decisions on September 14, 2024.  This appeal was fully submitted on January 10, 2025.

## Discussion

A district court reviews a bankruptcy court's factual findings for clear error and its conclusions of law de novo.  In re DiBattista, 33 F.4th 698, 702 (2d Cir. 2022).  The dismissal of a complaint pursuant to either Rule 12(b)(1) or Rule 12(b)(6), Fed. R. Civ. P., is reviewed de novo.  Costin v. Glens Falls Hosp., 103 F.4th 946, 952 (2d Cir. 2024).  A court's denial of leave to amend is reviewed for abuse of discretion, unless the denial was based on an interpretation of law, such as

futility, in which case review is de novo.  Miller v. United
States ex rel. Miller, 110 F.4th 533, 540 (2d Cir. 2024).

I.   Standing

     As an initial matter, the Bankruptcy Court concluded that
Dalia failed to demonstrate that she has standing to sue.  See
In re Genger, 2021 WL 3574034, at *15.  Dalia challenges this
conclusion on appeal.

     Article III standing is "always an antecedent question,
such that a court cannot resolve contested questions of law when
its jurisdiction is in doubt."  Do No Harm v. Pfizer Inc., 126
F.4th 109, 121 (2d Cir. 2025) (citation omitted).  A dismissal
for lack of Article III standing is a dismissal for want of
subject matter jurisdiction and, accordingly, must be without
prejudice.  Clementine Co., LLC v. Adams, 74 F.4th 77, 90 n.4
(2d Cir. 2023).

     To have standing, a plaintiff must "establish (1) an injury
in fact, defined as an invasion of a legally protected interest
that is concrete, particularized, and actual or imminent; (2) a
sufficient causal connection between the injury and the conduct
complained of; and (3) a likelihood that the injury will be
redressed by a favorable decision."  Citizens United to Protect
Our Neighborhoods v. Vill. of Chestnut Ridge, New York, 98 F.4th
386, 391 (2d Cir. 2024) (citing Lujan v. Defs. of Wildlife, 504

9

U.S. 555, 560-61 (1992)).  Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts."  TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021). The plaintiff bears the burden of establishing standing, and "each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation."  Do No Harm, 126 F.4th at 119 (citation omitted).

The standing inquiry is "distinct from whether a plaintiff has a cause of action."  SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020) (citation omitted).  Accordingly, a court must not "conflate the threshold question of the plaintiff's standing under Article III with the question of whether he has a valid claim on the merits."  Id. (citation omitted).

The FAC alleges that, due to allegedly fraudulent conveyances made as part of the 2013 Settlement Agreement, Dalia has been denied the economic benefit of the TRI shares to which, in her view, she is entitled under the 2004 Agreements.  Dalia has plausibly alleged that she suffered a monetary harm, which qualifies as a concrete injury under Article III.  See TransUnion, 594 U.S. at 425.

The defendants contend that Dalia lacks constitutional standing because Dalia and Orly are not in contractual privity and the FAC is premised on the "false representation" that she was entitled to the benefit of the TRI shares.  This confuses the question of whether Dalia has plausibly alleged that she suffered an injury in fact with whether Dalia has a valid claim on the merits.  See SMJ Kids, LLC, 963 F.3d at 206. Accordingly, Dalia's claims do not fail for lack of standing to bring them.

## II.  Statute of Limitations

Proceeding on the assumption that Dalia did have standing to bring her claims, the Bankruptcy Court concluded that Dalia's claims were time barred.  See In re Genger, 2021 WL 3574034, at *16.  Dalia contends that her suit was timely, or, in the alternative, that the statute of limitations should be equitably tolled.

A statute-of-limitations defense is an affirmative defense that a defendant must plead and prove.  Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).  "Nevertheless, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." Id. at 94 (citation omitted).

11

Under New York law,[1] an action to impose a constructive
trust or equitable lien is governed by the six-year statute of
limitations.  N.Y. C.P.L.R. 213(1); see also Morando v. Morando,
41 A.D.3d 559, 561 (2d Dep't 2007).  The six-year period runs
from "the occurrence of the wrongful act giving rise to a duty
of restitution."  Morando, 41 A.D.3d at 561 (citation omitted);
see also Dolmetta v. Uintah Nat. Corp., 712 F.2d 15, 18 (2d Cir.
1983) (same, constructive trust).  Where the "gravamen" of the
complaint is that the property was wrongfully "conveyed" beyond
the plaintiff's reach, the statute of limitations begins to run
on the date of the wrongful conveyance.  Delango v. Delango, 203
A.D.2d 319, 319 (2d Dep't 1994).

The Bankruptcy Court held that Dalia's cause of action
accrued in 2013, when Orly allegedly beached her promise to
Dalia, monetized her beneficial interests in the Rights,
transforming the Rights into cash and two Notes, and agreed to
distribute the cash and Notes to others, allegedly for no
consideration.  In re Genger, 2021 WL 3574034, at *17.  The
Bankruptcy Court held that Dalia's adversary proceeding, which
was commenced more than six years thereafter, was therefore
untimely.  Id.  This analysis is correct.  Accordingly, the six-

---

[1] The parties' briefing assumes that New York law governs this
action.  This is sufficient to establish choice of law.  Krumme
v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

year statute-of-limitations period ran on June 13, 2019, well before Dalia filed the adversary proceeding on January 22, 2020.

Dalia first argues that the wrongful act that set the statute-of-limitations clock running was Orly's 2014 refusal to indemnify Sagi after Sagi paid Dalia $200,000. Not so. The gravamen of Dalia's complaint is that, in June 2013, the trust property was wrongfully transferred beyond Dalia's reach.

In the alternative, Dalia contends that the statute-of-limitations period should be equitably tolled. New York law does not distinguish between the doctrines of "equitable tolling" and "equitable estoppel." Koral v. Saunders, 36 F.4th 400, 409 n.2 (2d Cir. 2022). Equitable tolling applies "[1] where the defendant conceals from the plaintiff the fact that he has a cause of action and [2] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." Id. at 409-10 (citation omitted). Equitable tolling "often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record." Clark, 89 F.4th at 94. Therefore, where a plaintiff has pleaded facts to justify equitable tolling, generally dismissal is not appropriate. Id. at 94 n.19. Here, however, Dalia's arguments for equitable tolling can be rejected as a matter of law.

13

Dalia first argues that equitable tolling is appropriate because she did not receive the 2013 Settlement Agreement until 2014. This argument was not raised before the Bankruptcy Court. In fact, she conceded in her opposition to the motions to dismiss filed before the Bankruptcy Court that she "was provided a copy" of the 2013 Settlement Agreement. During that litigation, she made no argument that there had been any delay in its receipt to justify equitable tolling. The Bankruptcy Court relied on this record. It stated, "Dalia does not maintain that the statute of limitations should be tolled because she was denied access to the 2013 Settlement Agreement. She acknowledges that she received a copy of the agreement and that the agreement clearly spells out" that the cash was paid to someone other than Orly and that the two Notes, which were not yet payable, were held in escrow by yet another individual for the benefit of someone other than Orly. In re Genger, 2021 WL 3574034, at *18.

Nor in her motion for reconsideration to the Bankruptcy Court did Dalia argue that the Bankruptcy Court had erred in reaching that conclusion or argue that she did not timely receive a copy of the 2013 Settlement Agreement. Thus, the argument she appears to make on appeal -- that her delay in receiving the agreement requires equitable tolling -- fails. A

court need not consider an issue raised for the first time on appeal.  <u>United States v. Mendonca</u>, 88 F.4th 144, 165 (2d Cir. 2023).

Dalia's second argument for equitable tolling fares no better.  Dalia contends that she was unaware of certain arrangements between Orly and certain transferees until late 2018.  But as Dalia conceded below, she knew from the face of the 2013 Settlement Agreement that Orly had transferred $17.3 million and the promissory notes to others.

In a related argument about the promissory notes, Dalia asserts that equitable tolling is justified because, under the terms of the 2013 Settlement Agreement, the promissory notes were payable only when certain legal claims were "dismissed with prejudice."  The issue, however, is not when the notes became due but whether their proceeds would be payable to Orly.  The 2013 Settlement Agreement makes clear that they no longer belonged to Orly, and as a result, their date of maturity is irrelevant to this appeal.

III. Failure to State a Claim

Dalia's appeal also fails because her FAC fails to state a claim.  The Bankruptcy Court concluded that, even if Dalia did have standing to sue and had timely sued, she failed to state a

15

claim upon which relief can be granted.  In re Genger, 2021 WL 3574034, at *19.  It was correct.

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A court evaluating a motion to dismiss for failure to state a claim may review "only a narrow universe of materials," including facts "stated on the face of the complaint" and

> documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, as well as documents not expressly incorporated by reference in the complaint that are nevertheless integral to the complaint.

Clark, 89 F.4th at 93 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving

16

party." Doe, 100 F.4th at 94 (citation omitted).  A court need
not, however, "credit 'a legal conclusion couched as a factual
allegation' or a 'naked assertion devoid of further factual
enhancement.'"  Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68,
75 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  Rather, a
court "refer[s] to a complaint's factual context to discern
whether to accept a complaint's conclusory statements."  Id.
(citation omitted).

    A.   Constructive Trust

    Dalia's first claim is for a constructive trust.
"[E]quity and good conscience" are "the fundamental
requirement[s] for imposition of a constructive trust."  In re
N.Y. Agency of Bank of Commerce & Credit Int'l S.A., 90 N.Y.2d
410, 424 (1997) (citation omitted).  Nevertheless, courts must
be aware of the tension between the law of constructive trust
and bankruptcy law and "proceed with caution": "by creating a
separate allocation mechanism outside the scope of the
bankruptcy system, the constructive trust doctrine can wreak
havoc with the priority system ordained by the Bankruptcy Code."
In re First Cent. Fin. Corp., 377 F.3d 209, 217 (2d Cir. 2004)
(citation omitted).

    Under New York law, a plaintiff must plead four elements to
state a claim for a constructive trust: "(1) a confidential or

17

fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." In re Ades & Berg Grp. Invs., 550 F.3d 240, 245 (2d Cir. 2008). Dalia has failed to plausibly plead at least the first and second elements, that is, the existence of a fiduciary relationship or a promise.[2]

### 1.   Confidential or fiduciary relationship

"A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give guidance for the benefit of another upon matters within the scope of the relation." Pauwels v. Deloitte LLP, 83 F.4th 171, 183 (2d Cir. 2023) (citation omitted). "Stated differently, a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." United States v. Kosinski, 976 F.3d 135, 149 (2d Cir. 2020) (citation omitted). "Mere kinship," however, "does not of itself establish a confidential relation." United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991) (citation omitted). Instead, the question is whether family members have by their conduct become fiduciaries. See id.

---

[2] The Bankruptcy Court concluded that Dalia failed to plead unjust enrichment as well. Because of the other deficiencies in Dalia's pleading, it is unnecessary to address the adequacy of the pleading of this third element.

The FAC alleges that "[a] confidential and fiduciary relationship of familial trust and confidence existed between" Dalia and Orly when Dalia transferred the Rights in her TRI shares to the Orly Trust.  As the Bankruptcy Court concluded, this is a legal conclusion and does not plausibly plead the existence of a fiduciary relationship.[3]  It rejected Dalia's argument that the mother/daughter bond sufficed to create a fiduciary relationship or that the transfer of the Rights established such a relationship.  In re Genger, 2021 WL 3574034, at *20-21.

On appeal, Dalia appears to abandon any argument that the FAC plausibly pleads a fiduciary relationship.  Instead, she relies on two documents filed by Orly in other litigation to supplement the FAC.  She contends that, taken together, these documents are sufficient to meet her own burden of pleading the existence of a fiduciary relationship.  Dalia cannot meet her

---

[3] In addition to this quoted language from paragraph 43 of the FAC, Dalia refers to allegations in "paragraphs 23 and 24" of her FAC.  Based on the quote she provides, however, she appears to be citing her original complaint.  "[I]t is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect."  Hancock v. Cnty. of Rensselaer, 882 F.3d 58, 63 (2d Cir. 2018) (citation omitted).  Dalia provides no reason to depart from that general rule here.  In any event, consideration of those additional paragraphs would not suffice to meet Dalia's pleading burden.

19

pleading burden through reference to these extraneous materials. In any event, they do not assist her.

The first document was a 2009 complaint that Orly filed in state court.  Dalia relied upon this document when she asked the Bankruptcy Court to deny the motion to dismiss.  The Bankruptcy Court concluded, however, that Orly's state court pleading focused on Dalia's fiduciary relationship to Orly as the beneficiary of the Orly Trust, and not on a fiduciary relationship with Orly as a daughter.  Id. at *21.  There was no error in that finding, even if it were appropriate to consider Orly's state court filing when assessing the adequacy of the FAC.

Finally, Dalia seeks to supplement her FAC's allegations by relying on a November 24, 2009 memorandum of law filed by Orly in certain state court litigation.  Dalia did not refer to this document, however, until she filed her motion for reconsideration.  As the Bankruptcy Court pointed out, the motion for reconsideration was not "the place" to bring this to the Court's attention "for the first time."  In re Genger, 2024 WL 4021557, at *9.  That is certainly correct.  Moreover, while a party's statement in its pleading may constitute an admission for purposes of the proceeding in which it is filed, it has no binding effect in separate litigation.  See Casa del

20

Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1213
(9th Cir. 2016).  Accordingly, the FAC failed to plead that
Dalia and Orly were in a confidential or fiduciary relationship.

  2. Express or implied promise

  The FAC alleges that two promises existed: the 2004 Promise
by Sagi to Dalia and the 2004 Indemnity by Orly of Sagi.
Whether read in isolation or together, these two promises do not
create a promise, express or implied, by Orly to Dalia.  In the
2004 Promise, Sagi agreed to support Dalia, upon demand, up to
the value of the TRI shares Dalia conveyed to the Orly Trust and
Sagi Trust under the 2004 Divorce Agreement.  In the 2004
Indemnity, Orly agreed to indemnify Sagi for a portion of his
payments to Dalia.  That promise to Sagi is the sole promise
that the FAC alleges Orly made.  Because Dalia has failed to
plausibly allege a promise by Orly to Dalia, her constructive
trust claim must, as the Bankruptcy Court held, be dismissed as
a matter of law.  See In re Genger, 2021 WL 3574034, at *22.

  On appeal, Dalia first contends that the FAC alleges that
"Orly promised to pay Dalia from the monetized proceeds of the
Rights".  This allegation is a legal conclusion and is in any
event directly contradicted by the 2004 Agreements that the FAC
incorporates.  Those agreements and the judicial decisions
interpreting them make clear that Orly did not promise to pay

Dalia from "the monetized proceeds of the Rights".  Instead, she promised only to "indemnify Sagi for his payments to Dalia." "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 147 (2d Cir. 2011).

Next, Dalia points to the 2015 Judgment, which is incorporated into the FAC.  But Judge Forrest's decision does not help Dalia.  Judge Forrest also concluded that Orly's sole promise was made to Sagi.  Genger I, 76 F. Supp. 3d at 499.

In a related argument, Dalia refers to materials that appeared in the record before Judge Forrest.  In Dalia's view, those materials constitute an admission by Orly that she promised Dalia to support her.  These materials are not incorporated into the FAC and would not be properly considered on a Rule 12(b)(6) motion.  But even if the materials were part of the pleadings, they would not assist Dalia.  They do not describe a promise by Orly to Dalia.  For example, the Sagi declaration on which Dalia relies explains that Sagi made a promise to Dalia and Orly made a promise to Sagi.

IV.  Equitable Lien

New York courts will impose an equitable lien on property where there is (1) an "express or implied contract concerning specific property" pursuant to which there is (2) "a clear intent between the parties that such property be held, given or transferred as security for an obligation." Ryan v. Cover, 75 A.D.3d 502, 502 (2d Dep't 2010) (citation omitted).

This claim fails for essentially the same reasons as the claim for a constructive trust. As the Bankruptcy Court concluded, the FAC fails to allege the existence of an express or implied agreement that the proceeds from the 2013 Settlement Agreement would be held as security for Orly's alleged obligations to Dalia.

Dalia does not advance any argument in her briefing that is directed specifically to the Bankruptcy Court's dismissal of her equitable lien claim. Instead, she asserts that the Bankruptcy Court addressed Dalia's claims "collectively," and that she thus follows "the same approach" on appeal. Dalia's arguments as to her constructive trust claim therefore fail for the reasons already discussed.

V.  Leave to Replead

Finally, and in the alternative, Dalia appeals the Bankruptcy Court's denial of her request for leave to amend her

23

complaint.  In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court may, however, decline to grant such leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Miller, 110 F.4th at 550 (citation omitted).

The Bankruptcy Court denied leave to amend on futility grounds.  In re Genger, 2021 WL 3574034, at *24.  Applying de novo review, leave to amend is not warranted here.  As the Bankruptcy Court explained, any amendment would be futile since there was no promise, express or implied, made by Orly to Dalia. On appeal, Dalia fails to point to any proposed amendment that could overcome this defect.  The decision to deny leave to amend is therefore affirmed.[4]

---

[4] Dalia's Notice of Appeal identifies the Bankruptcy Court's September 1, 2024 Memorandum Decision and Order denying her Motion for Reconsideration as the second judgment from which her appeal is taken.  A court's denial of a motion for reconsideration is reviewed for abuse of discretion. Commerzbank AG v. U.S. Bank, N.A., 100 F.4th 362, 376 (2d Cir. 2024).  Dalia advances no argument on appeal, however, as to why the Bankruptcy Court abused its discretion in denying her motion for reconsideration.  Accordingly, she has forfeited any appeal of the denial of her motion for reconsideration.  See Cerame v. Slack, 123 F.4th 72, 75 n.2 (2d Cir. 2024).

## Conclusion

The August 12, 2021 and September 1, 2024 Orders of the United States Bankruptcy Court for the Southern District of New York dismissing Dalia's claims are affirmed.

Dated:     New York, New York
           March 17, 2025

_Denise Cote_
DENISE COTE
United States District Judge